IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WESLEY BIRRELL, aka Bella-Christina Birrell,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHELE DiTOMAS,<br><br>　　　　　Defendant. | No. 2:22-CV-1834-KJM-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

   Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendant's motion to dismiss Plaintiff's Complaint. See ECF No. 19. Plaintiff has filed an opposition. See ECF No. 26. Defendants have filed a reply. See ECF No. 28.

   In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual

1

factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

///

2

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff David Wesley Birrell, a.k.a. Bella-Christina Birrell, is a male-to-female transgender inmate who uses female pronouns. See ECF No. 1, pgs. 2-3. Plaintiff names the following as defendants: (1) Dr. Michele DiTomas, the Acting Chief Medical Officer at the California Medical Facility (CMF); and (2) eight unknown defendants. See id. at 1, 2.

Plaintiff is classified as "high risk" due to her multiple serious, chronic medical conditions that require continuous medical monitoring and treatment. See id. at 5. According to Plaintiff, on December 8, 2020, a replacement officer was sick and infected with COVID-19 and was still allowed to work in the "U" Wing Housing Unit. Plaintiff asserts that the officer caused the COVID-19 virus to quickly spread throughout the housing unit, infecting multiple inmates and staff as well. See id. Plaintiff alleges that CMF administration issued a directive requiring inmates residing in Unit IV, where Plaintiff was housed, be cell fed to limit possible exposure to COVID-19. See id. Plaintiff further asserts that the officers on second watch repeatedly failed to adhere to the cell feed directive until there was a confirmed case of COVID-19 in the "U" Wing. See id.

Plaintiff claims that during this same period, unit medication release was ordered to be controlled with a few inmates released from their respective cells at a time to pick-up their medication. See id. at 6. Furthermore, Plaintiff asserts that there were no precautions taken to social distance inmates during unit medication release, as otherwise prescribed by the Centers for Disease Control, the California Department of Corrections and Rehabilitation, and the California Medical Facility throughout multiple memoranda. See id.

///
///
///

3

1   Plaintiff continues to address the lack of precautions taken for inmate safety by
2 some housing officers and inmate porters. See id. at 7. According to Plaintiff, between November
3 and December 2020, Plaintiff only observed one officer wear complete and proper Personal
4 Protective Equipment ("PPE") when working on the quarantined housing unit. See id. at 9.

5   Plaintiff asserts that Defendant DiTomas and CMF continuously failed to provide
6 its employees and inmate workers with proper and adequate training and the necessary and
7 required PPE to protect the inmate population from becoming infected with COVID-19. See id. at
8 10. Plaintiff alleges that she suffered from and is still suffering from "post-COVID-19 Syndrome"
9 as a direct and proximate result of the willful, deliberate, intentional, wanton and knowing acts of
10 Defendant DiTomas. See id. Plaintiff claims that Defendant DiTomas' deliberate and wanton
11 failure to ensure all the protocols, regulations were followed was a direct and proximate cause of
12 Plaintiff contracting COVID-19. See id. at 11. Additionally, Plaintiff asserts that Defendant
13 DiTomas' deliberate failure to establish a comprehensive daily screening process for all CMF
14 employees to prevent sick employees from entering CMF and infecting both inmate population as
15 well as employee population contributed to her injury. See id. at 12.

16   Plaintiff alleges that the acts and omissions of Defendant DiTomas and the
17 unnamed defendants, deliberately breached the "Special Relationship" doctrine that existed
18 between Plaintiff and Defendants because Defendants failed to prevent injuries to Plaintiff that
19 were preventable. See id. at 14. Plaintiff further asserts that, as a result of Defendant DiTomas'
20 lack of supervisory prowess coupled with the deliberate incompetency and deliberate indifference
21 of the unknown defendants, Plaintiff suffered and continues to suffer from "COVID-induced
22 brain fog; severe and exacerbated debilitating migraine headaches; shortness of breath when
23 Plaintiff exerts herself; cerebral dysfunction with mental confusion; impaired, dysfunctional
24 memory; extreme fatigue and exhaustion; chronic pain in her muscles and joints; and loss of
25 smell and taste." Id. at 10.
26 ///
27 ///
28 ///

## II. DISCUSSION

In their motion to dismiss, Defendant argues the following: (1) Plaintiff fails to state a claim for deliberate indifference to Plaintiff's health and safety, (2) Plaintiff seeks to impermissibly hold Defendant DiTomas liable under the doctrine of respondeat superior, (3) Plaintiff is not entitled to punitive damages against Defendant DiTomas, (4) Plaintiff's request for declaratory relief should be dismissed, (5) Defendant DiTomas is the incorrect party for any requested injunctive relief.  See ECF No. 19-1, pg. 1, 2.

### A.  **Eighth Amendment Claim for Deliberate Indifference**

The Court considers Defendant's first two arguments together as they are related. Over both arguments, Defendant asserts that Plaintiff has failed to state a cognizable Eighth Amendment claim because Plaintiff has not alleged facts showing Defendant's personal involvement as a supervisory official or even that Defendant had the authority to act.  See id. at 10-15.

According to Defendant:

> Here, Plaintiff's complaint contains very few factual allegations concerning Defendant DiTomas. And, what Plaintiff does allege, does not reveal any personal participation by Defendant or a causal connection between the acts that she attributes to Defendant DiTomas and Plaintiff's subsequent COVID-19 infection. Instead, Plaintiff concludes that Defendant DiTomas must be liable because she "was responsible" for both the creation of and enforcement of COVID-19 prevention policies at CMF, and responsible for her "subordinate employees." (See Compl. at ¶¶5–6, 49.) Plaintiff appears to conclude that because DiTomas was the acting Chief Medical Executive at CMF in December 2020, she was responsible for every alleged issues that arose related to COVID-19 mitigation measures undertaken by the institution. (See Compl. at ¶ 22 (failed to provide staff and inmates with proper PPE and training); ¶ 26 (failed to enforce protocols, regulations, and preventative policies with subordinates); ¶ 29 (failed to supervise inmate porters effectively.)) Such supervisor liability is not permitted in section 1983 claims—and Defendant DiTomas cannot be held liable for every potential negligent act by rank-and-file custody or medical staff in December 2020, especially when Plaintiff does not plead facts specifically identifying these alleged subordinate employees. Indeed, Plaintiff does not allege facts indicating that Defendant DiTomas personally directed, participated in, or had knowledge of any alleged violations by staff at CMF. That is, Plaintiff has not articulated facts showing DiTomas's direct participation in any alleged constitutional violation. See Lopez v. Burris, No. 13-cv-0330-JD, 2014 WL 6624584, at *2 (N.D. Cal. Nov. 20, 2014) (holding that conclusory statement that former CDCR Secretary was aware of issues and failed to act was insufficient to state § 1983 claim). [footnote 3 omitted]. And,

conclusory statements that merely recite the elements of a claim are insufficient for the purpose of Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

ECF No. 19-1, pg. 11.

Defendant adds:

> In this case, Plaintiff's conclusory claims do not adequately describe acts or omissions plausibly attributable to Defendant DiTomas that give rise to relief. While Plaintiff's complaint generally alleges that CMF's response to the threat of COVID-19 was inadequate (*see* Compl. at ¶ 22, failed to provide staff and inmates with proper PPE and training); ¶ 26, failed to enforce protocols, regulations, and preventative policies with subordinates); and ¶ 29 failed to supervise inmate porters effectively), these broad statements do not state a claim against Defendant. As discussed above, these allegations implicate Defendant's role as a supervisor rather than allege any direct acts or omissions attributable to her. And, furthermore, courts have routinely held that these generalized allegations asserting Defendant did not follow COVID-19 protocols or did not do enough to enforce them are insufficient to state a claim. *See, e.g., Sanford v. Eaton*, 2021 WL 1172911, at *6 (E.D. Cal. Mar. 29, 2021) (explaining that "in order to state a cognizable Eighth Amendment claim against the warden, associate wardens and the other defendants named, Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough regarding overcrowding to control the spread" of COVID-19).

ECF No. 19-1, pg. 13.

As to Defendant's authority to act, Defendant argues that the Federal Receiver, not Defendant DiTomas, has the sole power to act with respect to inmate health care in California. See ECF No. 19-1, pg. 14. According to Defendant:

> Additionally, Plaintiff fails to allege that Defendant had the authority to create COVID-19 mitigation measures or operational control over the implementation of said measures at CMF. Indeed, the California Department of Corrections and Rehabilitation's prisoner health care system is managed by the *Plata* Federal Receiver. *See Plata v. Newsom*, 445 F. Supp. 3d 557 (N.D. Cal. 2020); *see also Plata v. Schwarzenegger*, 603 F.3d 1088 (9th Cir. 2010). The Receiver has had operational responsibility over medical matters at California prisons, including CMF, even before the onset of the pandemic. *See, e.g., Hawkins v. Pollard*, No. 21-CV-01328-JO-JLB, 2022 WL 4110906, at *2 (S.D. Cal. Sept. 8, 2022), *report and recommendation adopted*, No. 21CV1328-JO-JLB, 2022 WL 16577535 (S.D. Cal. Nov. 1, 2022) ("The Court will take judicial notice of the fact that a receiver was appointed to oversee the operation of the medical system of the California Department of Corrections and Rehabilitation ("CDCR").").

ECF No. 19-1, pg. 14.

///

6

To establish that a prison official has violated their duty to protect inmates from serious risks to their health, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994). A plaintiff must show that the prison official knew of and disregarded an excessive risk to the inmate's safety to demonstrate deliberate indifference. See id. at 837; see also Simmons v. Navajo Cty., 609 F.3d 1-11, 1017 (9th Cir. 2010); Gibson v. Cty of Washoe, Nev., 290 F.3d 1175, 1187-88 (9th Cir. 2002); Jeffers v. Gomez, 267 F.3d 895, 913 (9th Cir. 2001) (per curiam); Anderson v. Cty. of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). The official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. "Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. See Farmer, 511 U.S. at 843.

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in

civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

Here, Plaintiff provides detailed allegations regarding the unnamed defendants' alleged deliberate indifference to the health and safety of inmates, but fails to provide adequate detail to describe acts or omissions plausibly attributable to Defendant DiTomas. Plaintiff fails to provide sufficient facts to show that Defendant knew of and deliberately disregarded the risk to inmate safety. In fact, Plaintiff stated that CMF disseminated multiple memoranda regarding COVID-19 safety protocols to ensure inmate safety. See ECF No. 1 at 10. Plaintiff does not, however, provide specific instances of Defendant's alleged deliberate indifference to inmate safety.

The Court also agrees that Plaintiff has not shown that Defendant DiTomas had the authority to create COVID-19 mitigation measures or control implementation of those measures at CMF. As Defendant notes, the CDCR prison health care system is managed by the Plata Federal Receiver. The Receiver has operational responsibility over medical matters at CMF during and prior to the onset of the pandemic. See Plata v. Newsom, 445 F. Supp. 3d 557, 561 (N.D. Cal. 2020); see also Hawkins v. Pollard, No. 21-CV-01328-JO-JLB, 2022 WL 4110906, at *2 (S.D. Cal. Sept. 8, 2022). Plaintiff's complaint fails to allege facts describing how Defendant DiTomas had any authority over creating a safety plan at CMF or how specifically Defendant failed to implement protocols as directed. Under Plata v. Newsom, a Plaintiff can establish a constitutional violation based on the threat posed by COVID-19, but the violation must be based on shortcomings in the response to the virus. Plata v. Newsom, 445 F. Supp. 3d 557, 561 (N.D. Cal. 2020). Here, Plaintiff fails to allege sufficient facts to show Defendant's response violated Plaintiff's constitutional rights.

Plaintiff should be provided leave to amend to either allege sufficient facts to show how Defendant DiTomas violated her constitutional rights, how Defendant DiTomas had operational authority with respect to Plaintiff's health care, or how the unnamed defendants were personally involved. To the extent Plaintiff wishes to pursue this action as against unnamed

8

1 defendants, she must name them in any amended complaint.

### B. Requests for Relief

The Court next considers Defendant's remaining arguments, all of which relate to Plaintiff's various requests for relief. First, Defendant argues that Plaintiff has failed to allege sufficient facts to support an award of punitive damages. Second, Defendant argues that Plaintiff's request for declaratory relief is inappropriate, redundant, and unnecessary. Third, Defendant asserts that DiTomas is not the proper party as to Plaintiff's request for injunctive relief.

#### 1. Punitive Damages

Defendant argues that Plaintiff failed to plead facts to show Defendant acted with the requisite intent to justify her claim for punitive damages. See ECF No. 19-1, pgs. 15-16. According to Defendant:

> Punitive damages may be assessed in a Section 1983 action only where a defendant's "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others[.] [T]his threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Where there is no evidence that a Section 1983 defendant has acted with evil intent, the defendant is entitled to a directed verdict on this issue that would otherwise be for the jury. *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991).
> Here, plaintiff failed to plead facts plausibly suggesting that Defendant acted with "evil motive or intent" or "reckless or callous indifference to the federally protected rights of others," necessary to justify his claim for punitive damages. *Smith*, 461 U.S. at 56. At best, Plaintiff made an overly broad and conclusory statement that Defendant's acts were "intentional, deliberate, reprehensible, wanton, impudent, flagitious, repugnant, outrageous, vile and was a blatant and disgusting abuse of authority and a gross violation of well-established statutory and regulatory law and Plaintiff's constitutional rights. (Compl. At ¶ 54, *see also* ¶¶ 55–56.) Such sweeping allegations in Plaintiff's complaint, seemingly accusing a medical professional of serious transgressions yet providing no supporting details regarding her specific conduct, are insufficient to support a punitive damages claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "formulaic recitation of the elements of a cause of action will not" state a claim.).

ECF No. 19-1, pgs. 15-16.

/ / /

/ / /

9

1          Punitive damages are available under § 1983. See Pac. Mut. Life Ins. Co. v.
2   Haslip, 499 U.S. 1, 17 (1991); Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985); Dang v.
3   Cross, 422 F.3d 800, 807 (9th Cir. 2005); Morgan v. Woessner, 997 F.2d 1244, 1255 (9th Cir.
4   1993).  Punitive damages are awarded by the jury's discretion. See Smith, 461 U.S. at 54; Woods
5   v. Graphic Commc'ns, 925 F.2d 1195, 1206 (9th Cir. 1991). The jury must determine that the
6   defendant showed reckless indifference to the constitutional rights of the plaintiff, or the
7   defendant acted with an evil motive. See Smith, 461 U.S. at 56; Dang, 422 F.3d at 807-09
8   (holding "that oppressive conduct is a proper predicate for punitive damages under § 1983");
9   Mitchell, 75 F.3d at 527 n.7; Morgan, 997 F.2d at 1255; Bouman v. Block, 940 F.2d 1211, 1233
10  (9th Cir. 1991). Additionally, the jury must also "make 'a discretionary moral judgment' that the
11  conduct merit[s] a punitive award.'" Woods, 925 F.2d at 1206 (quoting Smith, 461 U.S. at 52).

12         The Court finds Defendant's argument persuasive. Plaintiff has failed to allege
13  specific instances where Defendant displayed reckless indifference to Plaintiff's constitutional
14  right.  Despite Plaintiff's assertion that injuries resulted from Defendant's deliberate acts, there is
15  a lack of factual support regarding Defendant's personal indifference to implementation of
16  preventative protocols. See ECF No. 1 at 10. To warrant punitive damages, Plaintiff must
17  demonstrate that Defendant acted with evil intent or reckless disregard for Plaintiff's safety, a
18  crucial element yet to be substantiated.  She has not done so in the complaint currently before the
19  Court.  Plaintiff will be provided leave to amend to allege facts, if she can, showing that
20  Defendant DiTomas possessed the requisite evil motive to support a claim for punitive damages.

21              2.      Declaratory Relief

22         Defendant argues that Plaintiff's request for declaratory judgment should be
23  dismissed because it is "inappropriate, redundant, and unnecessary. See ECF No. 19 at 16.
24  According to Defendant:

> Here, Plaintiff's request for declaratory relief does not allege any ongoing controversy, any continuing or current risks to her safety, or any immediate threat of repeated injury. Instead, she alleges a past constitutional violation and seeks relief in the form of money damages. Thus, Plaintiff's request for declaratory relief should be dismissed for this reason alone.

10

> Further, if the Court agrees that Plaintiff has failed to state a claim for deliberate indifference, as set forth above, Plaintiff's related request for declaratory judgment should also be dismissed because she has failed to state any claim that would entitle [her] to such declaratory relief. See Aschroft v. Iqbal, 556 U.S. 662, 678 (2009).

ECF No. 19-1, pgs. 16-17.

"A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Vill., Cal., 333 U.S. 426, 431 (1948); see also Hewitt v. Helms, 482 U.S. 755, 762-63 (1987); Public Affairs Assocs., Inc. v. Rickover, 369 U.S. 111, 112 (1962) (per curiam); Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 533 (9th Cir. 2008); Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1222-23 (9th Cir. 1998) (en banc); Greater L.A. Council on Deafness, Inc. v. Zolin, 812 F.2d 1103, 1112 (9th Cir. 1987). Further, where an action is based on an alleged constitutional violation, declaratory relief is generally inappropriate. See Fitzpatrick v. Gates, 2001 WL 630534, at *4 (C.D. Cal. Apr. 18, 2001). Finally, when an action is based on a past event, the plaintiff must allege continuing or current adverse effects or allege an immediate threat of repeated injury. See id.

The Court finds Defendant's argument persuasive. Here, the Court finds that Plaintiff fails to state a claim for deliberate indifference, and therefore, Plaintiff has failed to state a claim that would entitle her to declaratory relief. Moreover, declaratory relief is generally inappropriate in cases which, as here, are based on an alleged constitutional violation which occurred in the past and the plaintiff fails to allege facts indicating continuing or repeated injury.

3. <u>Injunctive Relief</u>

Defendant argues that Plaintiff's prayer for injunctive relief should be dismissed. See ECF No. 19-1, pg. 17. According to Defendant:

> In her Prayer for Relief, Plaintiff seeks unspecified injunctive relief. (Compl. at 19.) Foremost, it is unclear for what purpose Plaintiff seeks injunctive relief, and on this basis alone, the Court should dismiss the request for injunctive relief as fatally vague. Second, to the extent that Plaintiff seeks injunctive relief regarding her health and safety at CMF, Defendant DiTomas is no longer the Chief Medical Executive at CMF, and thus is not the correct party concerning this relief. The current Chief Medical Executive is Traci Peterson, and thus, Defendant DiTomas does not presently hold the position from which Plaintiff seeks unknown

injunctive relief. (*See* Defendant's Request for Judicial Notice (RJN), Ex. A.) For these reasons, Plaintiff's injunctive relief claim should be dismissed from this case.

ECF No. 19-1, pg. 17.

Defendant's argument is well-taken. First, as discussed above, Plaintiff has not alleged sufficient facts to show Defendant DiTomas' personal involvement in a constitutional violation. Thus, unless Plaintiff sufficiently amends, there is no substantive basis for injunctive relief. Second, Defendant DiTomas is no longer the Acting Chief Medical Officer at CFM. As reflected in Defendant's request for judicial notice, DiTomas has been succeeded by Traci Peterson.[1]

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. Defendant's request for judicial notice, ECF No. 19-2, be GRANTED.

2. Defendant's motion to dismiss, ECF No. 19, be GRANTED.

3. Plaintiff's complaint be DISMISSED with leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 16, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

---

[1] The Court finds that Defendant's request for judicial notice, ECF No. 19-2, should be granted. The Court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record. See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008). The appointment of Traci Peterson as Chief Medical Officer is a matter of public record.